UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
ALDEN FERGUSON, *pro se*,　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　Petitioner,　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　:　　**MEMORANDUM AND ORDER**
　　　-against-　　　　　　　　　　　　　 :　　09-CV-1575 (DLI)
　　　　　　　　　　　　　　　　　　　　　:
JAMES J. WALSH,　　　　　　　　　　　　 :
　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　Respondent.　　　　　　　 :
----------------------------------------------------X
**DORA L. IRIZARRY, United States District Judge:**

*Pro se* Petitioner Alden Ferguson is currently serving a prison sentence of twenty-five years to life following his August 17, 1995 conviction in New York State Supreme Court, Kings County, for robbery in the first degree, New York Penal Law § 160.15[2]. Pursuant to 28 U.S.C. § 2254, Petitioner challenges his conviction and argues that: (1) he was denied effective access to the appellate process due to a thirteen-year delay in hearing his direct appeal; (2) he was deprived of his right to be present during most of the jury voir dire; (3) he was adjudicated and sentenced as a persistent violent felony offender in violation of his due process rights; and (4) he was denied due process because of judicial bias and prejudice. For the reasons set forth below, the petition is denied.

## BACKGROUND

The facts established at trial demonstrated that, on November 25, 1994, in Brooklyn, New York at approximately 11:30 pm, Petitioner and a male accomplice approached Robert Roche. (Trial Tr. ("Tr.") 27.) Petitioner grabbed Roche, threw him against a car, and took several items from him, while the accomplice stood guard with a gun. (Tr. 29-31.) Petitioner then took the gun from his accomplice and held it to Roche's head. (Tr. 31.) Petitioner

1

attempted to obtain Roche's Metropolitan Transportation Authority employee identification, which Roche had in an inside pocket, by ordering Roche to "drop his pants." (Tr. 34.) Roche escaped by running into the street in front of an approaching police car with his pants below his knees. (Tr. 35.) Roche then witnessed Petitioner placing the gun underneath a car. (Tr. 37.) Roche informed the police officers about the incident, and the officers apprehended Petitioner. (Tr. 36-40.) The police officers also retrieved Petitioner's gun. (Tr. 40-41.)

Petitioner's trial commenced in New York Supreme Court, Kings County on July 31, 1995. On August 7, 1995, the jury convicted Petitioner of robbery in the first degree. (Tr. 269.) On August 17, 1995, Petitioner was sentenced to a prison term of twenty-five years to life.

On August 18, 1995, Petitioner's assigned counsel filed a timely notice of appeal on behalf of Petitioner. (Resp. Ex. E.) On August 21, 1995, Petitioner filed a *pro se* notice of appeal. Petitioner also moved in the Appellate Division, Second Department ("Appellate Division") for permission to appeal as a poor person and for the assignment of counsel to prosecute the appeal. (Resp. Ex. F.) By order dated December 21, 1995, the Appellate Division denied the motion for permission to appeal as a poor person, "with leave to renew upon proper papers, including [Petitioner's] affidavit setting forth" Petitioner's full financial situation, including all assets and any sources of income before his conviction, the amount and source of counsel fees paid, and the source and amount of any bail money. (Resp. Ex. G.)

Approximately ten years later, in early December 2005, Petitioner sent a letter to the New York State Court of Appeals ("Court of Appeals") inquiring about his appeal. The Court of Appeals sent a reply dated December 12, 2005, informing Petitioner that no application for leave was made on his behalf and suggesting that Petitioner contact the Appellate Division. (Resp. Ex.

L.) Petitioner apparently contacted the Appellate Division, which sent Petitioner a letter stating that the court no longer had the papers Petitioner requested from 1995. (*Id.*) On June 5, 2006, Petitioner renewed his motion to the Appellate Division for poor person relief and assignment of counsel, and enclosed the requested financial information. (Resp. Ex. J.) By order dated October 24, 2006, the Appellate Division granted the motion for permission to appeal as a poor person and assigned counsel. (Resp. Ex. L.)

In the meantime, by *pro se* motion dated January 20, 2006, Petitioner had filed a motion in Supreme Court, Kings County to vacate his judgment of conviction pursuant to New York Criminal Procedure Law § 440.10. (Resp. Ex. H.) In his motion, Petitioner claimed he was denied due process and the effective assistance of counsel at trial, and argued that counsel failed to pursue Petitioner's *pro se* motion to dismiss the indictment, failed to properly address Petitioner's sentencing status as a mandatory persistent violent felony offender, and deprived Petitioner of his right to appeal from his judgment of conviction. (*Id.*) By decision and order dated August 8, 2006, the court denied Petitioner's motion. The court noted that, with regard to his speedy appeal arguments, "it is clear that it was [Petitioner's] failure to provide paperwork pertaining to his financial status that delayed a decision on the merits from being made." (Resp. Ex. K.) On August 17, 2006, Petitioner moved for leave to appeal to the Appellate Division, but the motion was denied on December 18, 2006. (Resp. Ex. Q.)

On June 26, 2007, Petitioner filed a motion in Supreme Court, Kings County seeking an order granting a writ of habeas corpus and dismissal of the indictment. (Resp. Ex. M.) On October 15, 2007, the Supreme Court denied the application. (Resp. Ex. O.) Petitioner applied for leave to appeal to the Appellate Division, but the application was denied. (Resp. Ex. R.)

3

On or about May 8, 2008, Petitioner filed his brief in the Appellate Division, thus perfecting the appeal of his conviction. (Resp. Ex. T.) Petitioner argued that he was deprived of his right to be present during most of the jury voir dire and that he was not advised that the trial would proceed in his absence or that the verdict would be legal and binding. Petitioner also argued that his adjudication and sentencing pursuant to New York's persistent violent felony offender statute was unconstitutional. (*Id.*) On January 27, 2009, the Appellate Division affirmed the judgment of the trial court. (Resp. Ex. V.) The court held that Petitioner had "knowingly and voluntarily waived his right to be present for the second day of voir dire after being warned of the consequences of his refusal to return to the courtroom . . . " *People v. Ferguson*, 58 A.D.3d 865, 865 (2d Dep't 2009). The court further held that Petitioner's objection to being adjudicated and sentenced as a persistent violent felony offender was unpreserved for appellate review, and in any event, the claim was without merit. *Id.* The Court of Appeals denied leave to appeal on April 1, 2009. (Resp. Ex. W.) Petitioner did not seek a writ of certiorari from the United States Supreme Court.

On or about September 29, 2009, defendant moved for a writ of error coram nobis. (Resp. Ex. X.) In his motion, defendant claimed, among other things, that he received ineffective assistance of appellate counsel, that the delay in the resolution of his appeal violated his right to effective access to the state appellate process, and that his motion to dismiss on speedy trial grounds was improperly denied. (*Id.*) On March 23, 2010, the Appellate Division denied Petitioner's application, stating that Petitioner had failed to establish that he was denied the effective assistance of appellate counsel. *See People v. Ferguson*, 71 A.D.3d 1046 (2d Dep't

2010). On August 4, 2010, the Court of Appeals denied Petitioner's application for leave to appeal. (Resp. Ex. AA.)

Petitioner filed this petition for a writ of habeas corpus on April 13, 2009.[1] On June 15, 2010, the court granted Petitioner's request to amend his petition. On June 25, 2010, Petitioner filed an Amended Petition.

## APPLICABLE LAW

**I. Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") narrowed the scope of federal habeas review of state convictions when the state courts have adjudicated a Petitioner's federal claims on the merits. Under the AEDPA standard, which governs the review of petitions challenging state convictions entered after 1996, federal courts may grant habeas relief only if the state court's adjudication on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). An "unreasonable

---

[1] Petitioner filed an earlier petition for writ of habeas corpus on March 6, 2008. (*See* Docket No. 08-cv-01038 (DLI).) However, because Petitioner's direct appeal was pending, Petitioner was permitted to withdraw the petition, without prejudice to refile upon exhausting his state remedies.

5

determination" is one in which "the state court identifie[d] the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Id.* at 413. A federal court may not grant relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the state court's application must have been "objectively reasonable." *Id.* at 409. "[A] determination of a factual issue made by a State court shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

The court is mindful that *pro se* submissions, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Therefore, the court interprets the petition "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citation omitted).

## DISCUSSION

### I. Undue Delay

Petitioner's first claim is that a delay in the adjudication of his appeal violated his right of effective access to the appellate process. (Petition at 5.) Respondent raised the claim of undue appellate delay in his Section 440.10 motion, and argued that his counsel was ineffective for depriving Petitioner of the right to appeal. The court denied this claim and held that Petitioner was at fault for the delay. Petitioner also raised his appellate delay argument in his corum nobis motion. Although the Appellate Division did not specifically mention this claim when denying

the corum nobis motion, the court still treats the claim for AEDPA purposes as "adjudicated on the merits." *Sellan v. Kuhlman*, 261F.3d 303, 312 (2d Cir. 2001). Therefore, the court reviews this claim under AEDPA's deferential standard of review.

The Supreme Court has clearly established the right to a speedy trial. *Barker v. Wingo*, 407 U.S. 514, 515 (1972) ("[A] speedy trial is guaranteed the accused by the Sixth Amendment to the Constitution."). Although the Supreme Court has not addressed whether this right applies to appeals, the Second Circuit has held that "the right to a reasonably timely appeal is included among the protections afforded by the due process clause when a state does provide for an appeal." *Cody v. Henderson*, 936 F.2d 715, 719 (2d Cir. 1991); *see also Brown v. Costello*, 2004 WL 1837356, at *2 (S.D.N.Y. Aug. 17, 2004). To determine whether a defendant has been denied the right to a speedy appeal, courts in the Second Circuit apply the following four factors discussed in *Barker v. Wingo*: (1) length of delay; (2) reason for the delay; (3) defendant's assertion of his right to a speedy appeal; and (4) prejudice to the defendant caused by the delay. *See Brooks v. Jones*, 875 F.2d 30, 32 (2d Cir. 1989); *see also Dawes v. Walker*, 2000 WL 33767752, at *2 (N.D.N.Y. Oct. 3, 2000).[2]

Here, the first and second factors are related and will be addressed together. Although the delay of ten years is substantial on its face, Petitioner is at fault for a majority of the delay. On December 21, 1995, Petitioner's motion to appeal as a poor person was denied with leave to amend, and Petitioner did not take immediate action to renew his motion. Approximately ten

---

[2] Courts also consider federal-state comity as a fifth factor. However, the fifth factor need not be considered here, because where "the appeal has already been decided by the appellate court, further consideration of this factor is unnecessary." *Dawes v. Walker* 2000 WL 33767752, at *3 (N.D.N.Y. Oct. 3, 2000) (citing *Sinatra v. Barkley* 741 F. Supp. 39, 42 (E.D.N.Y. 1990)).

years later, in December 2005, Petitioner began inquiring about his appeal. On June 5, 2006, Petitioner renewed his motion for poor person relief and the appointment of counsel, and in May 2008, Petitioner submitted a brief to perfect his appeal. Therefore, Petitioner caused the delay because he failed to renew his motion for poor person relief and the appointment of counsel in a timely manner. Where the Petitioner is at fault for the delay there is no constitutional violation. *See Rodriguez v. Connell*, 2009 WL 792092, at *6 (E.D.N.Y. Mar. 23, 2009) (denying habeas petition where appellate delay was result of defendant); *Jackson v. Bennett*, 2002 WL 1770781, at *3 (S.D.N.Y. July 31, 2002) (same). Although two years went by between Petitioner's renewal of his motion and the submission of the brief to perfect the appeal, this two-year delay was not exceptional and does not amount to a due process right violation. *See Vasquez v. Reynolds*, 58 Fed. Appx. 533, 534 (2d Cir. 2003) (holding no actual prejudice as a result of five-year delay).

The third factor—defendant's assertion of his right to a speedy appeal—also weighs against Petitioner's claim because Petitioner did not attempt to obtain counsel or complain during the bulk of the delay and did not vigorously pursue his appeal. *Brown v. Costello*, 2004 WL 1837356, at *3 (S.D.N.Y. Aug. 17, 2004) (noting that courts generally consider whether the petitioner takes steps to obtain counsel, regularly inquires of his counsel or the court about the delays in his appeal, or files a grievance against his appointed counsel).

With regard to the fourth factor, Petitioner was not prejudiced by the delay. Courts analyze the prejudice to a petitioner by examining the three interests that a speedy trial is meant to protect: (1) preventing oppressive post-trial incarceration should the appeal ultimately prove successful; (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility

8

that the appeal and any resulting retrial will be compromised by the passage of time." *Id.* at 510; *see also Brown v. Costello*, 2004 WL 1837356, at *4 (S.D.N.Y. Aug.17, 2004). These interests are equally applicable to a speedy appeal. *See Simmons v. Reynolds*, 708 F. Supp. 505, 509 (E.D.N.Y. 1989).

Petitioner has offered no evidence to prove that he suffered any undue anxiety or concern, or that any retrial was compromised by the passage of time. *See, e.g.*, *Hammond v. Conway*, 2007 WL 2572113, at *4 (E.D.N.Y. Aug. 31, 2007) ("Hammond has not asserted that his appeal is prejudiced in any way as a result of the delay, and I see no basis for such a contention."). At most, Petitioner, like most defendants who experience delay, suffered some anxiety, although his failure to protest during the majority of the delay, and his relatively lengthy sentence, weigh against a finding of prejudice. *Cf. Cameron v. LeFevre*, 887 F. Supp. 425, 433 (E.D.N.Y. 1995) (noting petitioner's relatively short sentence of four years as adding to the anxiety over the delay). In any event, it is clear that the appellate delay did not prejudice Petitioner because the Appellate Division concluded that Petitioner was lawfully incarcerated. *See, e.g.*, *Peek*, 2008 WL 5110988, at *6 ("[A]s for the fourth and final Barker factor, it does not appear that Plaintiff was truly prejudiced by the delay, since his appeal was denied on the merits.").

In sum, as the *Barker* factors weigh against Petitioner, his due process right to a speedy appeal has not been violated. Therefore, Petitioner's first claim is without merit, and the Appellate Division's conclusion was not contrary to clearly established federal law.

## II. Voir Dire

Petitioner's second claim is that he was denied the right to be present during most of the jury voir dire. The Appellate Division adjudicated this claim on the merits. *See Ferguson*, 58 A.D.3d at 865. Therefore, this claim will be reviewed under the AEDPA deferential standard.

The right to be present during trial stems from the Sixth Amendment right to confront witnesses. The Supreme Court does not hold that right to be absolute, and has stated that, "'the privilege (of personally confronting witnesses) may be lost by consent or at times even by misconduct.'" *Illinois v. Allen*, 397 U.S. 337, 342-3 (1970) (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 106 (1934)). Indeed, a defendant may waive the right to be present. "Such a waiver should be both knowing and voluntary, though knowledge and voluntariness may be inferred." *Green v. Ercole*, 2009 WL 5178437, at * 9 (E.D.N.Y. Dec. 31, 2009) (citing *Taylor v. United States*, 414 U.S. 17, 19-20 (1973)).

Here, defense counsel represented to the trial court that he warned Petitioner that voir dire would continue in Petitioner's absence. (Tr. 112, 118-19.) Despite this warning, Petitioner chose to be absent on August 1, 1995. The following day, Petitioner chose to return to the courtroom and was present for the remainder of the trial. (Tr. 8.) Given these facts, Petitioner knowingly and voluntarily chose to waive his right to be present during part of voir dire. *See Green*, 2009 WL 5178437, at *8-10 (holding that petitioner had voluntarily waived his right to be present at trial when he refused to go to court after given warnings that the trial would continue in his absence); *see also Cooks v. Graham*, 2010 WL 3582634, at *8 (S.D.N.Y. June 15, 2010) (denying habeas petition, holding that defendant waived right to be present when he chose to leave the courtroom during voir dire after being warned that voir dire would continue in

his absence), *adopted by Cooks v. Graham*, 2010 WL 3582637 (S.D.N.Y. Sept. 13, 2010). Therefore, Petitioner's right to be present was not violated, and the Appellate Division's conclusion was not contrary to clearly established federal law.

**III.     Persistent Violent Felony Offender**

Petitioner's third claim is that he was improperly adjudicated and sentenced as a persistent violent felony offender. The Appellate Division held that this claim was not preserved for appellate review. *See Ferguson*, 58 A.D.3d at 865. Where a state court holds that a claim is unpreserved based on a state rule, federal habeas courts do not generally review the claim if the finding of default constitutes independent and adequate state grounds. *Garvey v. Duncan*, 485 F.3d 709, 713 (2d Cir. 2007). However, "[w]e presume there is no such independent and adequate ground when, *inter alia*, the decision appears to be 'interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.'" *Brown v. Miller*, 451 F.3d 54, 56 (2d Cir. 2006) (quoting *Coleman v. Thompson,* 501 U.S. 722, 735 (1991)).

In the instant case, the Appellate Division relied on *People v. Rosen*, 96 N.Y.2d 329 (2001), to support their determination that Petitioner's claim was not preserved for review. The Second Circuit has held that, where the state court relies on *Rosen*, "[t]he procedural ruling based on state law [is] therefore 'interwoven' with the court's rejection of the federal law claim on the merits and 'does not bar federal habeas review.'" *Brown*, 451 F.3d at 57; *see also Besser v. Walsh*, 601 F.3d 163, 179 (2d Cir. 2010) ("[A] citation to *Rosen* in holding that a claim is procedurally barred establishes that the state court decision was interwoven with federal law."); *Bonilla v. Burge*, 2009 WL 4884092, at *13 n.10 (S.D.N.Y. Dec. 17, 2009) ("The Second Circuit

11

. . . has held that reliance on *Rosen* does not bar federal habeas review because the New York Court of Appeal's holding in *Rosen* was not based purely on a state-law ground . . ."). As a result, the claim will be reviewed on the merits.

The Supreme Court has held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). Here, the record clearly indicates that Petitioner was adjudicated and sentenced as a mandatory persistent violent felony offender under New York Penal Law § 70.08, which relies solely upon the court's finding of qualifying prior convictions to justify an enhanced sentence. *See* N.Y. Penal Law § 70.08 (defining "persistent violent felony offender" as someone who has "previously been subjected to two or more predicate violent felony convictions"); *see also Russell v. Rock*, 2009 WL 1024714, at *5-6 (E.D.N.Y. Apr. 15, 2009). This statute falls squarely within *Apprendi's* exception for sentence enhancements based solely on prior convictions. *See Russell*, 2009 WL 1024714, at *5-6; *Boutte v. Poole*, 2008 WL 3166696 at *3 n.5 (S.D.N.Y. Aug. 4, 2008) (collecting cases rejecting *Apprendi* challenges to § 70.08).

Here, the trial judge did nothing more than consider Petitioner's prior convictions in determining whether Petitioner qualified for the mandatory sentencing enhancement under § 70.08. Therefore, the judge's consideration of the prior convictions is neither impermissible judicial fact-finding nor an *Apprendi* violation, and this claim for relief is meritless.

**IV.     Judicial Bias**

Petitioner's fourth claim is that he was denied due process because of judicial bias and prejudice. Respondents argue that the judicial bias claim is unexhausted, and thus should not be reviewed by the court.

"A district court must dismiss any petition for habeas corpus, brought pursuant to 28 U.S.C. § 2254, that contains issues not exhausted in the state courts." *McKethan v. Mantello*, 292 F.3d 119, 122 (2d Cir. 2002). When a Petitioner presents the district court with a "mixed petition," including both exhausted and unexhausted issues, the court can offer the Petitioner "the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only the exhausted claims." *Id.* at 122 (internal quotation marks and citation omitted). "Alternatively, a district court may also dismiss the petition with a judgment on the merits." *Id*. (internal quotation marks and citation omitted); *see also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Here, even if the judicial bias claim is not exhausted, the claim is dismissed on the merits.

The Supreme Court has held that "the floor established by the Due Process Clause clearly requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracey v. Gramley*, 520 U.S. 899, 904-05 (1997) (internal citation and quotation marks omitted). Furthermore, "[t]o establish that a judge has engaged in misconduct sufficient to warrant habeas relief, petitioner must show that the judge demonstrated 'such a high degree of favoritism or antagonism as to make fair judgment

13

impossible.'" *Wright v. Conway*, 2009 WL 3273901, at * 13 (E.D.N.Y. Oct. 9, 2009) (quoting *Litkey v. Unites States*, 510 U.S. 540, 555 (1994)). "In this Circuit, the habeas petitioner faces a high burden to show a constitutional deprivation when the interference of the state trial judge is at issue." *A.S. Goldmen, Inc. v. Phillips*, 2006 WL 1881146, at *40 (S.D.N.Y. July 6, 2006).

Here, Petitioner argues that the justice who presided over several pretrial proceedings, and later served on Appellate Division panels that affirmed Petitioner's conviction and denied Petitioner's motion for a writ of error coram nobis, was biased. Petitioner states that the justice "expressed his animosity towards the petitioner first by denying his applications in state court, and then denying him the opportunity for appellate review instead of recusing himself from . . . petitioner['s] case." (*See* Am. Pet.) However, adverse rulings, without more, will rarely suffice to provide a reasonable basis for questioning a judge's impartiality, and "can only in the rarest circumstances evidence the degree of favoritism or antagonism required." *Liteky v. United States*, 510 U.S. 540, 555 (1994); *see also Cusamano v. Donelli*, 2010 WL 2653653, at *6 (S.D.N.Y. July 1, 2010) (adverse rulings alone are insufficient). Petitioner offers no support for his judicial bias claim other than his disagreement with the justice's rulings. Therefore, Petitioner's allegation of judicial bias does not warrant habeas relief. *DeMartino v. United States*, 2010 WL 3023896, at *9 (E.D.N.Y. Aug. 2, 2010) (judicial bias claim failed where petitioner offered "no support for his judicial bias claim other than his disagreement with [the judge's] rulings").

## CONCLUSION

For the reasons set forth above, Ferguson's petition for a writ of habeas corpus is denied. Petitioner is further denied a certificate of appealability as petitioner failed to make a "substantial

showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see* FED. R. APP. P. 22(b); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Luciadore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000). The court certifies pursuant to 28 U.S.C. §1915(a)(3) that any appeal from this order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: Brooklyn, New York
April 20, 2011

/s/
DORA L. IRIZARRY
United States District Judge